**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
PETER J. SANTIAGO, JR.         )
              Petitioner,              )
                                        )
v.                                      )         Civil Action No. 05-40158-FDS
                                        )
KATHLEEN DENNEHY,           )
              Respondent.           )
_____)

## MEMORANDUM IN OPPOSITION TO HABEAS CORPUS PETITION

This memorandum of law is submitted in opposition to the petition for a writ of

habeas corpus filed by Peter Santiago ("the petitioner").  As argued in this memorandum,

the petition must be denied where one of the claims is not cognizable on habeas review,

one of the claims is procedurally defaulted and where the petitioner cannot demonstrate

that the state court's adjudication of the third claim on the merits resulted in a decision that

was contrary to or involved an unreasonable application of clearly established Federal law,

as determined by the Supreme Court of the United States, or an unreasonable

determination of the facts in light of the evidence presented in the state court.

## PRIOR PROCEEDINGS

On December 12, 1997, a Franklin County grand jury returned indictments against

the petitioner, charging him with trafficking in two hundred or more grams of cocaine.  On

May 18, 1998, the petitioner moved to suppress the evidence found pursuant to search

warrant.  Following a hearing on June 15, 1998, the trial court, Carhart, J., denied the

motion on August 24, 1998.

A jury trial commenced on October 6, 1998, Carhart, J., presiding.  The jury found the

petitioner guilty on October 7, 1998. Judge Carhart sentenced the petitioner to fifteen years to fifteen years and one day.

On direct appeal, the petitioner raised two claims: 1) that the motion to suppress should have been allowed where the affidavit did not establish probable cause to issue the search warrant; and 2) the trial court abused its discretion in refusing to admit the proffered testimony of Fanta Saradeth regarding statements made by his deceased brother. The Massachusetts Appeals Court affirmed the conviction in a memorandum and order pursuant to Rule 1:28 on May 9, 2001. *Commonwealth v. Santiago*, 51 Mass. App. Ct. 1108, 746 N.E.2d 595 (2001)(S.A. Vol. I, Ex. 5).[1] The Supreme Judicial Court denied the petitioner's application for further appellate review on July 20, 2001. *Commonwealth v. Santiago*, 434 Mass. 1108, 757 N.E.2d 730 (2001) (S.A. Vol. I, Ex. 7).

_____On October 2, 2001, the petitioner filed a motion for release from unlawful restraint pursuant to Mass. R. Crim. P. 30(a). The trial judge denied this motion without a hearing on January 16, 2002. The Massachusetts Appeals Court affirmed the denial of the motion on March 8, 2005 in Memorandum and order pursuant to Rule 1:28. *Commonwealth v. Santiago*, 63 Mass. App. Ct. 1105, 823 N.E.2d 436 (2005) (S.A. Vol. II, Ex. 6). The Supreme Judicial Court denied the petitioner's application for further appellate review on July 5, 2005. *Commonwealth v. Santiago*, 444 Mass. 1106, 830 N.E.2d 1088 (2005) (S.A. Vol. II, Ex. 8).

---

[1] The respondent's supplemental answer will be referred to by volume and exhibit number as (S.A. Vol. –, Ex. –). The trial transcripts will be filed as volume III of the supplemental answer under separate cover.

_____The petitioner filed a habeas corpus petition on September 7, 2005.  The

respondent filed an answer and supplemental answer on September 30, 2005.  On

February 21, 2007, the petitioner filed a memorandum in support of his habeas petition.


## STATEMENT OF FACTS

_____The Massachusetts Appeals Court set forth the following facts in its decision on

petitioner's second appeal:

> On November 26, 1997, Greenfield police officers seized two hundred or more
> grams of cocaine from the apartment of Peter J. Santiago, Jr.  The police were
> acting pursuant to a search warrant.  The affidavit in support of the search warrant
> detailed a series of controlled cocaine transactions between Santiago and an
> unnamed informant.  On December 12, 1997, a grand jury indicted Santiago for
> trafficking in cocaine in violation of G.L. c. 94C, § 32E(b)(4).
>
> On February 24, 1998, Santiago's trial attorney filed nine pre-trial motions, including
> a motion for "informant information."  The defendant apparently believed, inter alia,
> that the police fabricated the informant and that the search warrant was therefore
> invalid.

*Commonwealth v. Santiago*, 63 Mass. App. Ct. 1105, 823 N.E.2d 436 (2005) (S.A. Vol. II,

6).

The Appeals Court made the following findings with respect to the motion for informant

information:

> The record reveals a dispute whether the informant motion was granted.  The April
> 22, 1998, entry in the Superior Court docket states, "Motions #5-14 and #7-21 are
> Assented to, ALLOWED."  "Motion 14" referred to the informant motion.  The
> defendant's appendix includes a copy of the filed informant motion.  In the lower left
> corner of this copy is a handwritten note, "4/22/98 Motion assented to," together with
> a partial signature.
>
> However, the Commonwealth filed a memorandum in opposition to the informant
> motion on June 15, 1998.  At a pretrial hearing on the same day, the defendant's trial

3

counsel asked the court to consider and allow his informant motion.  A memorandum from the prosecutor who handled the Santiago case[2] listed seven of the nine motions Santiago's trial counsel filed on February 24 as agreed upon.  The memorandum then stated, "The other two motions . . . were not agreed to at all."  The list of agreed upon motions did not include the motion for informant information.  Furthermore, a post-trial note from defense counsel to the defendant stated that the motion was denied.

Because the motion judge was the trial judge, his finding is entitled to special deference.  *Commonwealth v. Hung Tan Vo*, 427 Mass. 464, 467 (1998).  We also treat his conclusion that Santiago's motion for informant information was denied as a finding of fact, and we apply a clearly erroneous standard of review.  See *Commonwealth v. Chetwynde*, 31 Mass. App. Ct. 8, 12 (1991).  The record supports the finding.  While docket entries are prima facie evidence of the facts recorded therein, see *Commonwealth v. MacDonald*, 435 Mass. 1005, 1007 (2001), other evidence can rebut the prima facie effect of the docket entry.  *Commonwealth v. Mattos*, 404 Mass. 672, 677 (1989).  Based on the considerable evidence that the motion was argued and taken under advisement, and that neither party suggested that the motion had been allowed, the motion judge's finding that the informant motion had been denied is not clearly erroneous.

*Commonwealth v. Santiago*, 63 Mass. App. Ct. 1105, 823 N.E.2d 436 (2005) (S.A. Vol. II,

6).

## **ARGUMENT**

## I.  **THE PETITIONER'S FOURTH AMENDMENT CLAIM RAISED IN GROUND ONE IS BARRED FROM HABEAS REVIEW BY *STONE v. POWELL*.**

In *Stone v. Powell*, 428 U. S. 465 (1976), the Supreme Court held that "where the

State has provided an opportunity for full and fair litigation of a Fourth Amendment claim,

the Constitution does not require that a state prisoner be granted federal habeas corpus

---

[2]  The Appeals Court inserted the following footnote:
The memorandum was presumably to the clerk's office, and was marked "received Mar. 4, 1998."

relief on the ground that evidence obtained in an unconstitutional search was introduced at his trial." *Id.* at 482 (footnote omitted). *See Tart v. Massachusetts*, 949 F.2d 490, 497 n. 6 (1st Cir. 1991). In Ground 1 of the petition (ground 2 of the memorandum), the petitioner claims that the search of his apartment was conducted pursuant to an invalid warrant. This issue was the subject of full and fair litigation in state court, including a non-evidentiary hearing in Superior Court and a full appeal to the Massachusetts Appeals Court, *see Commonwealth v. Santiago,* 51 Mass. App. Ct. 1108, 746 N.E.2d 595 (2001), and it may not serve as the basis for habeas relief. *See Palmigiano v. Houle*, 618 F.2d 877, 878-883 (1st Cir. 1980); *Pignone v. Sands*, 589 F.2d 76, 77 (1st Cir. 1978). Ground 1 of the petition should be dismissed.

## II.    THE APPEALS COURT'S ADJUDICATION OF THE PETITIONER'S SIXTH AMENDMENT RIGHT TO PRESENT A DEFENSE CLAIM WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED SUPREME COURT LAW.

### STANDARD OF REVIEW

Because the subject petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("the AEDPA"), this Court's review is governed by that act. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Williams v. Matesanz*, 230 F.3d 421, 426 (1st Cir.2000) ("a federal [habeas] court operates within a closely circumscribed sphere"). In relevant part, the AEDPA precludes a federal court from granting habeas relief, unless the state court adjudication "resulted in a

5

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §2254(d)(2). In addition, under the AEDPA, state-court determinations of factual issues "shall be presumed to be correct," unless the petitioner rebuts this "presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1). This "highly deferential standard for evaluating state-court rulings" reflects the overarching structure of the federal habeas corpus scheme, which vests "primary responsibility" for evaluating federal law claims raised in criminal trials in the state courts, courts which must be presumed in habeas corpus courts to know and follow the law. *Woodford v. Visciotti*, 537 U.S.19, 24, 27 (2002) (per curiam).

A state-court decision is "contrary to" clearly established Supreme Court precedent in only two circumstances: (1) "if the state court applies a rule that contradicts the governing law set forth in" Supreme Court cases; or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme court] precedent." *Taylor*, 529 U.S. at 405-06. Under either scenario, to satisfy the "contrary to" clause, the state-court decision must be "substantially different," "diametrically different," "opposite in character or nature," or "mutually opposed" to clearly established Supreme court precedent. *Id.*

A state-court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."

6

*Id*. at 413.  In making this determination, a habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.  The same objective unreasonableness standard applies to the "unreasonable determination of facts prong of § 2254(d)(2).  *Torres v. Prunty*, 223 F.3d 1103, 1108 (9th Cir. 2000).

There is no bright line rule as to what constitutes an "objectively unreasonable" application of federal law or determination of facts.  *Taylor*, 529 U.S. at 410.  As the *Taylor* decision makes clear, however, an unreasonable state-court determination is not the equivalent of an incorrect one.  *Id*.  "Indeed, because Congress used the word 'unreasonable' . . . and not words like 'erroneous' or 'incorrect,' a federal habeas court 'may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application [or determination] must also be unreasonable.'" *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir.) , *cert. denied*, 534 U.S. 925  (2001) (quoting *Taylor*, 529 U.S. at 411).  As this Court sitting en banc held, "'some increment of incorrectness beyond error is required' . . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).  If, for instance, the state court reaches a determination that is "devoid of record support for its conclusion or is arbitrary," the AEDPA's unreasonable application prong may be satisfied.  *Id*. at 36-37 (citing *O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir. 1998)).  Since "[a]pplying a general standard to a specific case can demand a substantial element of

7

judgment," "[t]he more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." *Yarborough v. Alvarado*, 124 S. Ct. 2140, 2149 (2004). The clearly established law that is relevant to the analysis under § 2254(d)(1) is limited to the holdings of United States Supreme Court cases extant at the time of the state court decision, and does not include the dicta of such cases. *Id*. at 2147; *Williams*, 529 U.S. at 412.

Factual determinations of state courts are granted similar deference. To satisfy § 2254(d)(2), a petitioner must show that the state's factual determination was objectively unreasonable. *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 399 (2000)). Objective unreasonableness is not merely an incorrect or erroneous decision. *Williams*, 529 U.S. at 410; *see also Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003) ("petitioner's challenge to a decision based on a factual determination will not succeed if the petitioner merely evidences that the state court committed error. Instead, he must further establish that the state court committed unreasonable error."); *Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003) ("federal habeas court may not grant habeas relief under § 2254(d)(2) merely because it disagrees with a state trial court's factual determination").

Moreover, § 2254(d)(2) must be interpreted in conjunction with § 2254(e)(1), which specifies both that "a determination of a factual issue made by a State court shall be presumed to be correct," and that "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Sanna v. DiPaolo*, 265 F.3d 1, 7. *See also Miller-El,* 537 U.S. at 341 (noting that to prevail under § 2254(d)(2), habeas petitioner must both disprove the factual finding by clear and convincing evidence and demonstrate that the

8

court's factual determination was objectively unreasonable).

In his second argument, the petitioner claims that the trial judge violated his Sixth Amendment right to present a defense when he refused to allow Oley Saradeth's extrajudicial statement as an admission against penal interest.   The Appeals Court adopted the Commonwealth's argument in affirming the convictions.

In *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), the Supreme Court held that an accused has a fundamental right to present witnesses in his own defense. "In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*.   The Appeals Court's decision, which adopted the Commonwealth's argument, was not contrary to or an unreasonable application of this decision and other Supreme Court caselaw interpreting the right to present a defense.

The facts with regard to this claim are as follows:

Following jury empanelment, the trial judge held a voir dire hearing of Fanta Saradeth to determine whether statements made by his brother, Oley Saradeth were admissible as declarations against penal interest.     During this hearing, Fanta testified that he had a conversation with his brother Oley in December 1997 in which Oley told him that the drugs petitioner got arrested for were his (Tr. I/67-68). A week after the petitioner got arrested, Oley was pulled over by the police (Tr. I/68).  He told the petitioner where the drugs were and the petitioner went and got them (Tr. I/68).  On April 27, 1998, as Fanta was driving Oley to the hospital, where Oley later died, Oley told Fanta to get a hold of the petitioner and to tell him he was very sorry (Tr. I/70-71).

On cross-examination, Fanta testified that Oley had been stopped by the police a week *before* petitioner got arrested (Tr. I/74).  The police officer asked Oley to tell him where he got

9

the drugs that were found in his car (Tr. I/74). Oley said he told the police where the drugs were but Fanta did not know where (Tr. I/75). Oley told Fanta that he went to the petitioner's house the week before the petitioner was arrested, but Fanta did not know whether Oley left drugs there (Tr. I/76).

The trial judge ruled the statements inadmissible because two of the three prerequisites for a statement against penal interest were not fulfilled. First, the statement or the circumstances under which the statement was made did not subject the declarant to criminal liability, and second, there was no corroboration of the statement (Tr. I/93). The Commonwealth made a similar argument on appeal, which was adopted by the Appeals Court: the statement was properly excluded by the trial court because it failed to satisfy two of the three requirements for admissibility of statements against penal interest. Although Oley was unavailable because he had died prior to trial, his statement to Fanta would not have subjected him to criminal liability and it was not corroborated in any significant way. (S.A. Vol. I, Ex. 3, pp. 15-20).

The Appeals Court, in adopting the Commonwealth's argument, analyzed the claim under the Massachusetts evidentiary rules governing admission of declarations against penal interest. The test, which mirrors Fed. R. Evid. 804(b)(3), includes three prerequisites:

> [1] [T]he declarant's testimony must be unavailable; [2] the statement must so far tend to subject the declarant to criminal liability 'that a reasonable man in his position would not have made the statement unless he believed it to be true'; and [3] the statement, if offered to exculpate the accused, must be corroborated by circumstances clearly indicating its trustworthiness.

*Commonwealth v. Zuluaga*, 43 Mass. App. Ct. 629, 643, 686 N.E.2d 473 (1997), quoting *United States v. Thomas*, 571 F.2d 285, 288 (5th Cir.1978). *See* Proposed Mass.R.Evid. 804(b)(3). Because the Supreme Court in *Chambers* required that a defendant abide by the established rules of evidence in presenting his defense, the Appeals Court's decision did not contradict the governing law set forth in Supreme Court cases. *Taylor*, 529 U.S. at

10

405-06.

Nor was the Appeals Court decision contrary to *Chambers* because the court confronted a set of facts that were indistinguishable from those in *Chambers* and arrived at a different result. *Taylor*, 529 U.S. at 405-06. The hearsay statements in *Chambers* had many more inidica of reliability than the statement which was excluded in this case. As the *Chambers* Court found:

> First, each of McDonald's confessions was made spontaneously to a close acquaintance shortly after the murder had occurred. Second, each one was corroborated by some other evidence in the case-McDonald's sworn confession, the testimony of an eyewitness to the shooting, the testimony that McDonald was seen with a gun immediately after the shooting, and proof of his prior ownership of a .22-caliber revolver and subsequent purchase of a new weapon. The sheer number of independent confessions provided additional corroboration for each. Third, whatever may be the parameters of the penal-interest rationale, each confession here was in a very real sense self-incriminatory and unquestionably against interest. (Citations omitted). McDonald stood to benefit nothing by disclosing his role in the shooting to any of his three friends and he must have been aware of the possibility that disclosure would lead to criminal prosecution. Indeed, after telling Turner of his involvement, he subsequently urged Turner not to 'mess him up.'

*Chambers*, 410 U.S. at 300-301.

By contrast, the statement sought to be introduced in this case was not clearly inculpatory nor was it sufficiently corroborated by other evidence. First, as the Commonwealth pointed out in its brief on appeal, the statement did not indicate that the drugs found in the petitioner's apartment had been put there by Oley Saradeth (S.A Vol. I, Ex. 3, p. 16). Instead Oley indicated to the police when he was arrested that the drugs came from the petitioner (Tr. I/68, 72-74, 76). This statement does not indicate a "knowing acceptance of likely harm to himself." *Commonwealth v. Marple*, 26 Mass. App. Ct. 150, 158-159, 524 N.E.2d 863 (1988). If he meant that he had obtained the drugs from the

11

petitioner, such disclosure would most likely have been intended to curry favor with law enforcement. Where he had already been caught with drugs in his car, the statement was not likely to cause him any further criminal liability. If the intent of the statement to the police was that the petitioner had put the drugs in his car, then it was meant to exculpate himself.

The circumstances surrounding the statement also bolster the conclusion that Oley did not think that the statement would expose him to criminal liability. The statement to his brother merely recounted statements he had already made to the police (Tr. I/68-69, 72-75). Moreover, Oley made the statement in confidence to his brother and was not thinking that his brother would turn him into the police (Tr. I/79-81).

The petitioner's arguments regarding the trustworthiness of the statement because it was made in confidence to his brother are misplaced. Trustworthiness is the third prerequisite for admissibility of a statement against penal interest and does not factor into the determination of whether a statement tends to subject the declarant to criminal liability. *See United States v. Bagley*, 537 F.2d 162, 165 (5th Cir. 1976) ("The identity of the person to whom the statement was made, and the circumstances in which the disclosure was made are to be considered in assessing the trustworthiness of the statement). In order to fulfill the third requirement, the extra-judicial statement "must be corroborated by circumstances clearly indicating its trustworthiness." *Zuluaga*, 43 Mass. App. Ct. at 643. Among the factors which may be considered are : the plausibility of the testimony in light of the rest of the proof; the degree of disinterestedness of the witnesses; the reliability and character of the declarant; and whether other people heard the statement. *Commonwealth v. Drew*, 397 Mass. 65, 73, 489 N.E.2d 1233 (1986).

With regard to the first factor, the evidence presented by the Commonwealth shows

12

the implausibility of any assertion that Oley was responsible for the drugs found in the petitioner's apartment. The petitioner was found alone in his one-bedroom apartment, where police found more than a kilogram of cocaine stored in boxes, a digital scale, and more than $7,000 in cash (Tr. I/118-119, 138-162, 170-172, 188). More than 900 grams of cocaine was packaged in a box addressed to "Johnny R. Santiago" at the petitioner's apartment (Tr. I/167-169, 172-173, 188).    Nearly $6,000 in case was discovered in the petitioner's dresser drawer and $500 in cash in his car (Tr. I/149). This evidence was set forth in the prosecutor's argument following the voir dire of Fanta Saradeth (Tr. I/89-92). Thus, there was no connection between Oley and the petitioner's apartment aside from the petitioner's own self-serving testimony (Tr. I/213).

Furthermore, the witness who reported the statement was the declarant's brother, who clearly was not a disinterested party. Oley's character was also suspect where he had been found in possession of cocaine and arrested (Tr. I/68, 72-73). Nobody else overheard the original statement. Fanta testified to another statement Oley made on the way to the hospital on the day he died in which he ambiguously told Fanta to apologize to the petitioner. Although this statement was overheard by another person, the trial court properly found that this vague statement did not meet any of the requirements for a statement against penal interest (Tr. I/83).

In light of the distinct differences between the factual circumstances in *Chambers*, in which the Supreme Court reversed the convictions due to exclusion of a third party's confession, the Appeals Court's decision was not contrary to clearly established Supreme Court caselaw. Nor was the decision an unreasonable application of such caselaw where, as argued *supra*, the Appeals Court reasonably applied evidentiary rules to determine the admissibility of an extrajudicial statement as an exception to the hearsay rule. Petitioner has not shown incorrectness beyond mere error or that the Appeals Court's conclusion was

13

devoid of record support or arbitrary.  *McCambridge v. Hall*, 303 F.3d at 36-37.  Habeas

relief must be denied on this claim.

## III.    THE PETITIONER'S THIRD CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL IS PROCEDURALLY DEFAULTED AND PETITIONER HAS FAILED TO SHOW CAUSE FOR AND PREJUDICE FROM THE DEFAULT OR THAT FAILURE TO CONSIDER THE CLAIM WILL RESULT IN A FUNDAMENTAL MISCARRIAGE OF JUSTICE.

_____In his third claim, the petitioner argues that his trial counsel was ineffective for failing

to pursue discovery of information pertaining to an anonymous informant.  Where the

petitioner failed to raise this claim in his first motion for new trial it is procedurally defaulted.

_____It is well-established that federal habeas review of a claim is precluded when the

state court has decided that issue on the basis of an adequate and independent state

ground.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Harris v. Reed*, 489 U.S. 255,

262 (1989); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977).  The "procedural default rule"

reflects the Supreme Court's view that, in the interests of comity and federalism, a habeas

court should "'not review a question of federal law decided by a state court if the decision of

that court rests on a state law ground that is independent of the federal question and

adequate to support the judgment.'"  *Boutwell v. Bissonnett*e, 66 F.Supp.2d 243, 245 (D.

Mass. 1999), *quoting Coleman*, 501 U.S. at 729.  *See also Edwards v. Carpenter*, 529

U.S. 446, 450 (2000).  As a consequence of this rule, "state prisoners whose claims are

dismissed by state courts for procedural reasons cannot gain access to federal habeas

review."  *Boutwell v. Bissonnette*, 66 F.Supp.2d at 245 (citations omitted).

"[A]n adequate and independent finding of procedural default will bar federal habeas

14

review of the federal claim, unless the habeas petitioner can show 'cause' for the default

and 'prejudice' attributable thereto, or demonstrate that failure to consider the federal claim

will result in a 'fundamental miscarriage of justice.'"  *Harris,* 489 U.S. at 262.  *Accord,*

*Coleman*, 501 U.S. at 749-50.  The "miscarriage of justice" exception to a showing of

cause and prejudice is "'seldom to be used, and explicitly tied to a showing of actual

innocence.'"  *Killela v. Hall*, 84 F.Supp. 2d 204, 210 (D. Mass. 2000), *quoting Burks v.*

*DuBois*, 55 F.3d 712, 717 (1st Cir. 1995).

In Massachusetts, even after conviction has become final, a petitioner may seek

release from unlawful confinement or a new trial under Rules 30(a) and (b) of the

Massachusetts Rules of Criminal Procedure.  Mass. R. Crim. P. 30(a) and (b), 378 Mass.

842, 900 (1979).  However, a petitioner's right to resort to such relief is limited:

> *Waiver.*  All grounds of relief claimed by a defendant under
> subdivisions (a) and (b) of this rule shall be raised by the defendant *in his*
> *original or amended motion.  Any grounds not so raised are waived* unless
> the judge in his discretion permits them to be raised in a subsequent motion,
> or unless such grounds could not reasonably have been raised in the original
> motion or amended motion.

Mass. R. Crim. P. 30(c)(2), 378 Mass. 842, 900-01 (1979)(emphasis added).  *See Hall v.*

*DiPaolo*, 986 F.2d 7, 11 (1st Cir. 1993).  The waiver rule under Mass. R. Crim. P. 30(c)(2)

is well-established and regularly applied to bar claims.  *Commonwealth v. Azar*,  435 Mass.

675, 675-676, 760 N.E.2d 1224 (2002); *Commonwealth v. LeFave*, 430 Mass. 169, 170,

714 N.E.2d 805 (1999).  In this case the petitioner filed a motion under Mass. R. Crim.P.

30(a) after his trial but before the Massachusetts Appeals Court affirmed his conviction.  He

did not raise ineffective assistance of counsel in that motion.  The trial judge found the

15

claims in the second motion for new trial to be waived.  The Appeals Court acknowledged this default and relied on it in declining to consider the merits of the ineffective assistance of counsel claim.  *Commonwealth v. Santiago*, 63 Mass. App. Ct. 1105, 823 N.E.2d 436 (2005).  This determination constitutes an "adequate and independent state law ground" within the meaning of the procedural default rule, thereby precluding habeas review.  *See Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir. 1997), *cert. denied*, 522 U.S. 1151 (1998).  The limited review the Appeals Court undertook pursuant to the substantial risk of a miscarriage of justice standard does not "undercut the adequacy and independence of the state grounds."  *Phoenix v. Matesanz*, 189 F.3d 20, 25 n.2 (1st Cir. 1999), quoting *Burks v. DuBois*, 55 F.3d at 716 n.2.  *See also Tart v. Massachusetts*, 949 F.2d 490, 496 (1st Cir. 1991).

The petitioner has not demonstrated sufficient cause for failing to raise the ineffective claim regarding his intoxication defense in the first motion for new trial.  The Supreme Court has recognized three objective factors, external to the defense, that are sufficient to constitute cause to excuse a procedural default: (1) the factual or legal basis for a claim was not reasonably available; (2) interference by state officials that made compliance with the state procedural rules impracticable; or (3) attorney error rising to the level of constitutionally ineffective assistance of counsel.  *Coleman*, 501 U.S. at 751; *Murray*, 477 U.S. at 488.  *See also Edwards*, 529 U.S. at 451.   The petitioner had new counsel and since this issue was available at the time of the first motion for new trial, there is no reason why the claim could not have been added to those raised in the motion for new

trial which was filed in 1999.

Nor can the petitioner show any prejudice from defense counsel's failure to follow up on the motion for informant information.  As the Appeals Court found, the record supports the motion judge's (who was also the trial judge) conclusion that the motion for informant information was denied.  Although the docket indicates that the motion was allowed, other evidence, including the fact that the motion was later argued and taken under advisement, rebuts the prima facie effect of the docket entry.  The state court's finding of fact on this matter is entitled to a presumption of correctness.  Pursuant to 28 U.S.C. § 2254(e)(1), a petitioner must rebut this presumption by clear and convincing evidence.  *Sanna v. DiPaolo*, 265 F.3d 1, 7.  *See also Miller-El,* 537 U.S. at 341 (noting that to prevail under § 2254(d)(2), habeas petitioner must both disprove the factual finding by clear and convincing evidence and demonstrate that the court's factual determination was objectively unreasonable).  Petitioner has failed to do so in this case.  Thus, counsel cannot be found to have been ineffective for failing to pursue a motion that had been denied.  The petitioner has failed to show cause for or prejudice from his procedural default and the ineffective assistance claim must therefore be dismissed.

17

## CONCLUSION

For the foregoing reasons, the habeas corpus petition should be denied with

prejudice

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

/s Susanne G. Reardon
Susanne G. Reardon
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200 ext. 2832
BBO No. 561669

Dated: March 26, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the attached documents was served upon Donald K. Freyleue, Six Highland Avenue, Ipswich, MA 01938, by first dass mail, postage pre-paid, on March 26, 2007.

/s/ Susanne G. Reardon
Susanne G. Reardon
Assistant Attorney General