UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER J. SANTIAGO, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil Action No. |
| v. ) | 05-40158-FDS |
| ) | |
| KATHLEEN DENNEHY, ) | |
| ) | |
| Respondent. ) | |

## ORDER ON REPORT AND RECOMMENDATION

**SAYLOR, J.**

This is a petition for a writ of habeas corpus filed by a person in state custody pursuant to 28 U.S.C. § 2254. On October 7, 1998, a state court jury convicted petitioner Peter J. Santiago, Jr., of trafficking in cocaine. He is presently serving a fifteen-year term of imprisonment.

Santiago asserts three grounds for relief. He contends that (1) his Fourth Amendment rights were violated by the search of his apartment; (2) his Sixth Amendment right to present witnesses was violated when the trial court excluded an allegedly exculpatory out-of-court statement made by a deceased person; and (3) his Sixth Amendment right to effective counsel was violated when his lawyer failed to obtain the name of the police informant referenced in the search warrant. The matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. The Magistrate Judge recommended that the petition be denied, and petitioner timely filed an objection.

Pursuant to § 636(b)(1), the Court has made a *de novo* determination of those portions of the report and specified proposed recommendations as to which objection is made by petitioner.

For the reasons set forth below, the Report and Recommendation are accepted, and the petition will be denied.

**I.      Background**

In November 1997, police obtained a search warrant for Peter Santiago's apartment, based (at least in part) on information provided by an informant. Upon execution of the warrant, police seized more than 200 grams of cocaine.

Prior to his trial, Santiago's attorney filed nine pretrial motions, one of which was a motion to compel the prosecution to disclose the informant's identity to the defense. The trial docket initially showed that the motion had been granted. However, this appears to have been an administrative error. When the docket notation appeared, the judge had not yet ruled on the motion. *See Commonwealth v. Santiago*, 2005 WL 549489 at *1-2 (March 8, 2005) (unpublished opinion). In fact, the prosecution filed an objection to that motion, and the judge later denied it. *Id*.

Santiago was convicted after a trial in October 1998. In November 1998, he appealed. In September 1999, represented by new counsel, he filed a motion for release from unlawful restraint pursuant to Mass. R. Crim. P. 30(a). *See Commonwealth v. Santiago*, 2005 WL 549489 at *1 (March 8, 2005) (unpublished opinion). The trial judge denied the motion. Santiago appealed the denial of his motion for release, complaining that an unlawful search violated his Fourth Amendment rights, and that the trial court's failure to admit out-of-court statements by a now-deceased person violated his Sixth Amendment rights. In May 2001, the Massachusetts Appeals Court denied his appeal and affirmed his conviction. *See Commonwealth v. Santiago*, 51 Mass. App. Ct. 1108 (2001) (no opinion). Santiago did not raise a claim of ineffective counsel on this

direct appeal or in his subsequent Rule 30 motion. *See Commonwealth v. Santiago*, 2005 WL 549489 at *1 (March 8, 2005) (unpublished opinion).

In October 2001, Santiago, now proceeding *pro se*, filed a second Rule 30 motion alleging, among other things, ineffective assistance of trial counsel. The court denied the motion without a hearing, finding that (1) Santiago had waived all the claims in his motion by failing to raise them on direct appeal and (2) the pretrial motion for disclosure of informant information had never actually been granted by the trial court. *Id*. Santiago then appealed the denial of this second Rule 30 motion, contending, among other things, that the judge erred in concluding that he had waived his ineffective counsel claim. *Id*.

In March 2005, the Massachusetts Appeals Court upheld the trial court's denial of the second Rule 30 motion, finding:

> (1) that the trial judge (in 1998) had not granted the motion concerning the informant;
>
> (2) that Santiago waived his ineffective counsel claim by not raising it on his direct appeal;
>
> (3) that even if his failure to raise the ineffective counsel claim on direct appeal did not constitute a waiver of the claim, failing to raise it in the first Rule 30 motion constituted a waiver;
>
> (4) that Santiago had waived his right to claim (as he tried to do before the Massachusetts Appeals Court) that he also had ineffective (albeit different) counsel for his initial Rule 30 motion, because he failed to raise ineffective counsel claim in his second Rule 30 motion; and
>
> (5) that whatever errors Santiago's initial trial counsel may have made, there was no substantial risk of a miscarriage of justice.

*Id*. at *2-3. Santiago then filed this petition for a writ of habeas corpus on September 7, 2005.

## II.     Analysis

A federal court may not issue a writ of habeas "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Petitioner's contentions raise only the first issue—whether the state court matter involved an "unreasonable application of . . . clearly established Federal law."[1]

"'[A]n unreasonable application' of Supreme Court case law occurs if 'the state court identifies the correct governing legal principle for th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Jackson v. Coalter*, 337 F.3d 74, 81 (1st Cir. 2003).  The "unreasonable application" determination

> must be decided primarily on the basis of Supreme Court holdings that were clearly established at the time of the court proceedings.  Nevertheless, factually similar cases from the lower federal courts may inform such a determination, providing a valuable reference point when the relevant Supreme Court rule is broad and applies to a kaleidoscope array of fact patterns.

*Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002).

An unreasonable state court decision is not the equivalent of an incorrect decision.  *See Williams v. Taylor*, 529 U.S. 362, 389 (2002); *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (stating that "the test is not whether it is possible that a competent court could have reached the same conclusion").  "If it is a close question whether the state decision is in error,

---

[1] A state court's finding on factual issues "shall be presumed to be correct," and the petitioner bears the burden of disproving factual findings by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

4

then the state decision cannot be an unreasonable application . . . . [S]ome increment of incorrectness beyond error is required." *McCambridge*, 303 F.3d at 36 (citation omitted). "In the end, a state court decision is objectively unreasonable under [§ 2254(d)] only if it is so offensive to existing precedent, so devoid of record support, or so arbitrary as to indicate that it is outside the universe of plausible, credible outcomes." *Kibbe v. DuBois*, 269 F.3d 26, 36 (1st Cir. 2001) (citation and internal quotation marks omitted).

### A. Fourth Amendment Claim

Upon *de novo* review, this Court agrees with the conclusion of the Magistrate Judge and will adopt the Report and Recommendation as to the Fourth Amendment claim.

### B. Sixth Amendment Claim – Right to Present Witnesses

Upon *de novo* review, this Court agrees with the conclusion of the Magistrate Judge as to the Sixth Amendment claim concerning petitioner's right to present witnesses. The Court, however, adopts a somewhat different analytical approach.

The petitioner contends that his Sixth Amendment right to present witnesses in his favor was violated when the trial court refused to permit a witness named Fanta Saradeth to testify as to what Fanta's brother, Oley, who died prior to trial, had told Fanta regarding the drugs found in petitioner's apartment.[2]  Fanta apparently would have testified that:

> Well, he [Oley] told me that the drugs that [petitioner] got arrested for was [*sic*] his, and I was stunned. I didn't know what to say. And he just told me that, and then he said a week after he had been arrested, that he had got

---

[2] Petitioner cites *Chambers v. Mississippi*, 410 U.S. 284 (1973), in which the Court held that Chambers' Sixth Amendment rights were violated when he was precluded from offering testimony of three different witnesses (friends of McDonald) who would all testify that McDonald had separately confessed to each of them that he (and not Chambers) had shot the police officer. The witnesses would have testified that McDonald told them details of the crime, including what kind of gun he used and how he later disposed of the gun. This evidence would have been corroborated by an eyewitness who was at the scene of the shooting and saw McDonald holding a gun.

>   pulled over and been arrested, and he didn't know what to do.  And he said
>   he told him where he had it and went and got it.  And that was it.  That's
>   all he told me.  I didn't want to know anymore.  That's all I wanted to
>   know.  I didn't have nothing to do with it.

Trial Vol. I, at 68-69.

According to Fanta, prior to petitioner's arrest, Oley had been pulled over while driving a car, and was arrested when the police found drugs on him.  Fanta said that Oley had visited petitioner's apartment sometime between his own arrest and the search of petitioner's apartment.  Fanta was not sure, but thought that Oley meant that he left drugs at petitioner's apartment during that visit.  Fanta also said that while he was driving Oley to the hospital (apparently some time after the initial conversation), just before Oley died, Oley told him to find petitioner and tell petitioner that he was very sorry.

At trial, petitioner sought to have both of Oley's statements admitted as statements against the declarant's (Oley's) interest.  Under Massachusetts and federal law, a hearsay statement is admissible as "a statement against penal interest" if:

>   (1) the declarant is unavailable to testify, (2) the statement so far tends to
>   subject the declarant to criminal prosecution that a reasonable person in the
>   declarant's position would not have made the statement unless he believed
>   it to be true, and (3) if offered to exculpate the accused, it is corroborated
>   by circumstances clearly indicating its trustworthiness.

*Commonwealth v. Burnham*, 451 Mass. 517, 524 (2008).  *See* Fed. R. Evid. 804(b)(3); *Commonwealth v. Galloway*, 404 Mass. 204, 207 (1989) (stating that Massachusetts has "adopted in substance the principle expressed in Rule 804(b)(3) of the Federal Rules of Evidence").[3]

---

[3] In excluding Oley's out-of-court statements, the Massachusetts trial court applied state evidentiary law. In the case of statements against penal interest, Massachusetts state law mirrors Federal Rule of Evidence

In order to prevail, the petitioner must show that the trial court's exclusion of the evidence violated his Sixth Amendment right to present witnesses. *See* 28 U.S.C. § 2254(d). Under most circumstances, the application of an evidentiary rule to exclude a statement offered by a defendant does not violate the Sixth Amendment. *See Fortini v. Murphy*, 257 F.3d 39, 46 (1st Cir. 2001) (". . . a defendant whose proffer of evidence was rejected for any conventionally plausible reason or rule usually has an uphill struggle"). Petitioner must show that the exclusion of the evidence was an unreasonable application of clearly established federal law construing the Sixth Amendment.

The Court first considers whether the ruling was correct as a matter of evidentiary law. There is no dispute that Oley was unavailable. Thus, in order to be admissible, Oley's statements must have tended to subject him to criminal liability and, because his statements are offered to exculpate the petitioner, there must be "sufficient corroboration to clearly indicate [the] trustworthiness" of the statements. *See United States v. Barrett*, 539 F.2d 244, 251 (1st Cir. 1976). The trial court ruled that neither "of those two prerequisites to the admissibility of the statement have been met." Trial Vol. 1, at 93.

To be against penal interest, a statement does not have to be a clearly conclusive confession. *See United States v. Barrett*, 539 F.2d 244, 251 (1st Cir. 1976); *Burnham*, 451 Mass. at 525 (stating that "[a] statement against penal interest need not contain a direct admission of guilt"). It is sufficiently against penal interest if it is the type of evidence that would be damaging to the declarant if the declarant himself were on trial. *Barrett*, 539 F.2d 251. Oley admitted to Fanta that he had possessed drugs (although it is unclear which drugs and what quantity) and,

---

804(b)(3).

thus, his statement did expose him to potential criminal liability.

The trial court found that because Oley knew that Fanta, his brother, would not turn him into the police, the statement did not in fact tend to subject Oley to criminal liability and, thus, did not meet the requirements of Rule 804(b)(3). However, the mere fact that statements are made to friends or confidants (and not law enforcement) does not negate the possibility that the statements were against penal interest. *Id*. *See also United States v. Westry*, 524 F.3d 1198, 1215 (11th Cir. 2008).

The requirement that the statement also be sufficiently corroborated is more problematic for petitioner. That requirement is "not an insignificant hurdle." *Id* at 253. "Although 'the judge should not be stringent' in evaluating whether a statement is adequately corroborated, 'judges are obliged to exercise a discriminating judgment' in assessing the likelihood that the declarant's statement is true based on the circumstances of the case." *Commonwealth v. Dew*, 443 Mass. 620, 632 (2005). The trial court found "no corroboration . . . clearly indicating [the statement's] trustworthiness." (Trial Vol. 1, at 93).

Petitioner argues that because Oley made the statement to his brother—a person to whom he had no reason to lie—that fact alone should be a sufficient guarantee of the reliability and truthfulness of the statement. *See, e.g., United States v. Barone*, 114 F.3d 1284, 1301 (1st Cir. 1997) (finding sufficient reliability of statement without corroborating evidence where statement was made to a close family member and the declarant did not make any attempt to minimize his own criminal role). However, applying that rule to petitioner's case would ignore the fact that Oley's statement was vague as to how he was responsible for the drugs found in petitioner's apartment. Even Fanta was unsure what exactly Oley meant by his statement. Therefore,

although Oley clearly admitted to possessing drugs, it is not clear how those drugs directly related to petitioner.

Oley's statement to Fanta did not explicitly say that he left drugs at petitioner's apartment; that was just an inference drawn by Fanta. The need to make that inference may, standing alone, make the statement too remote to be sufficiently corroborated such that it could be admitted to exculpate the petitioner. In addition, Oley's statement did not include any detail as to when he left drugs at petitioner's apartment or what quantity of drugs he left there. Petitioner claims that during the search of his apartment, the police found a pair of jeans (that petitioner's alleges were Oley's) with some drugs in the pockets.[4] However, in the apartment, the police also found more than 900 grams of cocaine in a box with petitioner's name on it, thousands of dollars in cash, and other drug-preparation paraphernalia. There is *no* evidence connecting any of these other items to Oley.

Petitioner contends that Oley's request to Fanta, while in the car on the way to the hospital, to find petitioner and tell him Oley was very sorry (a statement heard by Fanta and another passenger) corroborates Oley's prior statement. However, Fanta does not claim that in the car that day Oley explained why he was sorry, or ever mentioned drugs. Fanta just assumed that Oley was referring back to the earlier statement made in his bedroom. This statement is even more vague than the first. Neither the Massachusetts Appeals Court nor the Magistrate Judge found this to be particularly persuasive as corroborating evidence.

The question then becomes whether the exclusion of the statement violated petitioner's

---

[4] Rarely will the defendant's own testimony, alone, be considered sufficient corroboration for a hearsay statement against interest tending to exculpate the accused. *See United States v. Tovar*, 687 F.2d 1210, 1213-1214 (8th Cir. 1982); *United States v. Rodriguez*, 706 F.2d 31, 40 (2d Cir. 1983).

Sixth Amendment right to present witnesses—or, more precisely, whether the state court's resolution of that issue was unreasonable. The Court must defer to the state court decision unless it is objectively unreasonable and so offensive to existing precedent, so devoid of record support, or so arbitrary that it is outside the universe of plausible outcomes under established federal law. *Kibbe v. DuBois*, 269 F.3d 26, 36 (1st Cir. 2001). This standard is at least as deferential (if not more so) than the "abuse of discretion" standard applied by appeals courts to district court rulings. *See Obershaw v. Lanman*, 453 F.3d 56, 59 (1st Cir. 2006).[5]

In *Chambers*, the leading case on this issue, there were three witnesses to whom the declarant had confessed; the confessions included substantial detail; and there was eyewitness testimony to corroborate the declarant's statements. Here, however, there is only one witness; the statement is significantly lacking in detail; and there is no one other than the petitioner to provide corroborating evidence. *See United States v. Millan*, 230 F.3d 431, 437 (1st Cir. 2000) (finding no error with the district court's ruling that there was insufficient corroboration where the offered corroborating witness testimony lacked detail and would have required the finder of fact to draw remote inferences).

Under the circumstances, the state court's decision was not so offensive to existing federal precedent, so devoid of record support, or so arbitrary as to be objectively unreasonable. The fact that a reasonable jurist might have concluded otherwise does not require that the petition be granted. Therefore, the writ cannot be granted on the argument that the trial court's application of Massachusetts evidentiary law violated petitioner's Sixth Amendment rights.

---

[5] In the appellate context, "the application of an evidentiary rule to particular facts is normally tested by an abuse of discretion standard, which favors the prevailing party." *See United States v. Barone*, 114 F.3d 1284, 1296 (1st Cir. 1997).

    **C.**    **Sixth Amendment Claim – Right to Effective Assistance of Counsel**

Upon *de novo* review, this Court agrees with the conclusion of the Magistrate Judge and will adopt the Report and Recommendation as to the Sixth Amendment claim concerning the right to effective assistance of counsel.

**III.**    **Conclusion**

For the foregoing reasons, upon *de novo* review, petitioner's objections to the Report and Recommendation of the Magistrate Judge are overruled, and the Report and Recommendation is accepted by the Court pursuant to 28 U.S.C. § 636(b)(1). The petition for a writ of habeas corpus pursuant to § 2254 is DENIED, and this matter is accordingly DISMISSED.

**So Ordered.**

                                                /s/ F. Dennis Saylor
                                                F. Dennis Saylor IV
                                                United States District Judge

Dated: January 26, 2009